SPENCER *et al.*, *Appellants*, v. O'NEILL.

1. **Curtesy.** An estate by the curtesy is not an incident to a life-estate.

2. **Ejectment:** ADVERSE POSSESSION. Where real estate is conveyed in trust for a married woman to the sole use of her and her heirs by her present husband (defendant) and they have a daughter born to them, after which the wife dies and the husband remains on the premises with the daughter who married, each paying part of the expenses of housekeeping for three years, when the daughter dies and her husband continues to live on the premises five years without paying board, the possession of defendant after the daughter's husband leaves will not bar a recovery of the premises in an action by the husband and heirs of the daughter, there being nothing to show that such possession was adverse.

3. ———: RES JUDICATA. One ejectment action is not a bar to another, though they are between the same parties and in respect to the same title and same tract of land.

4. ———: BILL OF PEACE. Resort must be had to a bill of peace for relief against repeated actions of ejectment.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*S. N. Holliday* for appellant.

(1) Under the deed to Bayha, trustee for Mary Catherine O'Neill, John O'Neill, at his wife's death, took a life-estate, as tenant by the curtesy, and his possession was in his own right. (*a*) When Mary Catherine O'Neill died, the estate of Charles Bayha, the trustee, became executed in Mary G. O'Neill, subject to the life-estate of her father, John O'Neill, as tenant by the curtesy. *Roberts v. Mosely*, 51 Mo. 282; *Baker v. Nall*, 59 Mo. 265; *Tremmel v. Kleiboldt*, 75

Mo. 255. (*b*) The court erred in excluding the record in suit 59,045, offered in evidence by the plaintiffs. The issue of the statute of limitations was decided adversely to John O'Neill, in suit number 59,045, and the defendant claiming under John O'Neill, and this case being tried on exactly the same evidence as case 59,045, that question was *res adjudicata. Foster v. Evans*, 51 Mo. 39. (*c*) Mary Catherine O'Neill's trustee, Bayha, under the deed to him read in evidence, held the fee simple title for the use, and subject to the disposal, of said Mary Catherine O'Neill. *Green v. Sutton*, 50 Mo. 190; *Ruby v. Barnett*, 12 Mo. 3; *Reinders v. Koppelmann*, 68 Mo. 482; *Bryant v. Christian*, 58 Mo. 98; *Tremmel v. Kleiboldt*, 75 Mo. 255; *Jackson v. Robbins*, 16 Johns. 288. (*d*) The conveyance of a fee simple title to Bayha, trustee, for the use and absolute disposal of Mary Catherine O'Neill, did not debar her husband, John O'Neill, from curtesy in the lands of which she died in actual possession. *Tremmel v. Kleiboldt*, 75 Mo. 255; Tiedeman on Real Property, secs. 92, 105. (*e*) John O'Neill, having a life-estate, was entitled to the possession of the premises for his life, and could have no adverse possession. (2) Even though John O'Neill had had no life-estate in the premises, his possession was not adverse. (3) As there are no disputed facts, this court should render judgment here for the plaintiffs for possession, and for damages at fifty dollars per month, the admitted monthly value from the institution of this suit, June 11, 1884.

*W. C. & James C. Jones* for respondent.

(1) The deed from Elkanah English and wife to the trustee of John O'Neill's first wife, Mary Catherine O'Neill, dated August 4, 1859, vested in Mary Catherine O'Neill an estate for life, with remainder over to the heirs of her body by John O'Neill begotten, which

heirs, under the law of this state in force at that time, took as purchasers, and not by inheritance. Tiedeman on Real Prop., sec. 48; 1 Washburn Real Prop., p. 102; *Phillips v. LaForge*, 89 Mo. 72; *Burris v. Page*, 12 Mo. 359; R. S. 1855, p. 355. The power of disposal annexed to a life-estate is merely a power, and if not exercised does not affect the quantity or extent of the estate already granted. *Reinders v. Koppelmann*, 68 Mo. 490; *Jecko v. Taussig*, 45 Mo. 170; *Pendleton v. Bell*, 32 Mo. 100; *Russell v. Eubanks*, 84 Mo. 83; *Ruby v. Barnett*, 12 Mo. 7; *Bryant v. Christian*, 58 Mo. 102; *Green v. Sutton*, 50 Mo. 186. (2) John O'Neill's first wife, Mary Catherine O'Neill, having only a life-estate, John O'Neill had no estate by the curtesy in the property. *Phillips v. LaForge*, 89 Mo. 72; Tiedeman Real Prop., secs. 101–110. (3) Therefore, when Mary Catherine O'Neill died, October 5, 1871, the right to the possession of the property immediately vested in Mary G. O'Neill (sole heir and daughter of Mary Catherine O'Neill by said John O'Neill). *Phillips v. LaForge, supra.* (4) Inasmuch as the plaintiffs (and those through whom plaintiffs claim, John O'Neill Spencer and Mary G. O'Neill) were not seized or possessed of the premises in question within ten years before the commencement of this action (which is for the recovery of lands and for the recovery of the possession thereof), the same cannot be commenced, had or maintained by them. The possession of the defendant, and those through whom she claims, was all that the law requires, actual, adverse, open, hostile, exclusive and continuous. (5) Mary G. O'Neill was under no disability to assert her right to the property at the death of her mother, when the right to possession vested, and her subsequent disability, created by her marriage with James A. Spencer, did not stop the statute of limitations, which had already commenced to run. Nor did the minority of her son, upon whom the descent was cast at her

death, interfere with the continued running of the statute of limitations. *Landes v. Perkins*, 12 Mo. 239; *Smith v. Newby*, 13 Mo. 160; *Rogers v. Brown*, 61 Mo. 187. (6) The defense in this case and defense in the case of *Spencer v. O' Neill*, number 59,045, are not identical, and the question of adverse possession is not, therefore, *res judicata*. *Kimmel v. Bena*, 70 Mo. 52; *Gibson v. Chouteau*, 76 Mo. 38; *Ekey v. Inge*, 87 Mo. 493. (7) The question whether the possession of John O'Neill was sufficient to constitute adverse possession was a question of fact. This question of fact having been passed upon by the circuit court, sitting as a jury, the supreme court will not disturb its finding, if there is any evidence at all upon which to base that finding. That this is a question of fact will hardly admit of argument. Angell on Limitations, sec. 390; *Bradstreet v. Huntington*, 5 Peters [U. S.] 402. There being evidence in the case to sustain the court in its finding, your honors will not attempt to pass upon its weight. *Baum v. Fryrear*, 85 Mo. 154; *Thies v. Garbe*, 88 Mo. 149; *Reid v. Ins. Co.*, 58 Mo. 429 and 430; *Charles v. Patch*, 87 Mo. 462; *Bank v. Armstrong*, 4 S. W. Rep. 725, 726; *Anderson v. Griffith*, 86 Mo. 549; *State to use v. Brokerage Co.*, 85 Mo. 411; *Rothschild v. Railroad*, 4 Southwestern Rep. [Mo.] 418; *Foster v. Evans*, 51 Mo. 40.

SHERWOOD, J.—Ejectment for lots 31 and 32 in city block 466, east, of the city of St. Louis. The property fronts on Autumn street. Action brought June 11, 1884. Answer a general denial.

Under stipulations, admissions were made that the defendant was in the possession of the premises, when suit was brought, and that the monthly value thereof was fifty dollars per month, and that Jno. O'Neill, the husband of Mary Catherine O'Neill, and afterward of Magdalena C. O'Neill, died in March, 1884.

Plaintiffs offered in evidence a deed from Elkanah English and wife to Charles Bayha as trustee for Mary Catherine O'Neill, dated August 4, 1859, and recorded in the city of St. Louis on August 5, 1859, which said deed was admitted to be duly acknowledged and recorded, and conveyed the lots in controversy in this suit. The *habendum* clause of said deed is as follows: "To have and to hold said lots of ground, together with all and singular the privileges and appurtenances thereto belonging, or in any manner appertaining unto the said party of the second part, his heirs, assigns, successors in trust for the sole use, benefit, enjoyment and behoof of the said Mary Catherine O'Neill and her heirs by her husband, the said John O'Neill, begotten, and to his assigns, and in the event of the death of the said Mary Catherine O'Neill without heirs as aforesaid, for the use, benefit, enjoyment and behoof of her husband John O'Neill. Said property to be held by the said party of the second part, for the purposes above set forth, entirely free from all control, restraint and interference on the part of the said John O'Neill. The said Mary Catherine O'Neill to have, hold, use, enjoy and occupy the exclusive and undisturbed possession of said lots and the appurtenances thereunto belonging, with full power without the intervention in any manner whatsoever of her said husband, to direct the sale, lease, or other disposal of the same, at her own will and pleasure, and to receive for her own use and benefit the proceeds of such sale, and all rents and profits arising from the lease or other disposal of the same. The said party of the second part holding said real estate subject at all times to the direction, in writing, under her hand and seal by her acknowledged of the said Mary Catherine O'Neill, her heirs, as aforesaid, or her assigns, as to the disposal of said lots, whether by lease, conveyance in fee, assignment or transfer of this trust or otherwise, and without the intervention of

her husband, the said John O'Neill, in any manner whatsoever, and the said Mary Catherine O'Neill shall have power, at any time, hereafter, whenever she may for any cause whatever deem it necessary or expedient, by an instrument in writing, under her hand and seal by her acknowledged, to nominate and appoint a trustee or trustees in the place and stead of the party of the second part above named, which trustee or trustees, or the survivor of them, or the heirs, assigns or successors of such survivors, shall hold the said real estate upon the same trust as above recited, and subject to the direction and control of the said Mary Catherine O'Neill in like manner as above provided, and, upon the nomination and appointment of such trustee or trustees, the estate in trust hereby vested in the party of the second part shall thereby be fully transferred to and vested in the trustee or trustees so appointed.''

The plaintiffs read in evidence the deposition of James A. Spencer, taken in another suit. ''I am James A. Spencer, the plaintiff in this suit. I married Mary G. O'Neill, daughter of John O'Neill and Mary Catherine O'Neill, May 28, 1873. Mary G. O'Neill was then living in St. Louis, on Seventeenth street, between Market and Walnut, with her parents. I had one child by Mary G. O'Neill, born June 9, 1874, and named John O'Neill Spencer. My wife died June 22, 1874, and my son, John O'Neill Spencer, died December 2, 1874. My wife, was born May 20, 1849, and was twenty-four years of age when I married her. After we were married I moved to Eleventh street, between Market and Clark avenue, and lived there until December, 1873. John O'Neill was at that time a traveling man, and when in St. Louis he stopped there. In December, 1873, my wife, myself and child (by a former marriage), moved into one of the houses sued for in this case, at the request of Mr. O'Neill. I remained in the house until the first part of 1879; my son, by my first marriage, left in 1878. The expenses of housekeeping were

borne in part by Mr. O'Neill and in part by myself. Part of the time I was out of employment—off and on, and Mr. O'Neill paid the expenses then. I paid the largest portion of the expenses. My child, John O'Neill Spencer, during its life, always lived in this house, except a short time it lived on Morgan street. It died in the house on Autumn street. From the time of my wife's death, Mr. O'Neill paid the largest portion of the expenses. O'Neill married again in 1876. He lived in the same house after he was married. O'Neill never asked me for board. In 1877 or 1878 I let him have one hundred dollars to pay the taxes, and a short time after that I gave him twenty-five dollars. Once he told me he thought the housekeeping expenses were too high and that we had better go to boarding elsewhere. That was some time in the neighborhood of the death of the child. I never collected any of the rents of the property.

" O'Neill has lived in the Autumn street house from the time we moved from Eleventh street until the present time. I lived there until 1879, when I left. I only gave him during the time I lived there twenty dollars, besides the one hundred dollars and twenty-five dollars I have mentioned. I got some money from Mr. O'Neill at different times. It did not exceed fifty dollars in all. He let me have this before I gave him the one hundred dollars. I never collected any of the rents for myself. I made one collection for Mr. O'Neill. As far as I know all the rents collected were collected by him. I never paid any taxes, except one bill I paid for him, in his name, with money furnished by him for the purpose."

The defendant then introduced in evidence a deed from the sheriff dated March 3, 1884, conveying to her, she being the second wife of John O'Neill, all the interest of John O'Neill in the litigated premises. Also, the deposition of Jno. O'Neill, taken in another

case, as follows: "John O'Neill being duly sworn, on his oath says: My name is John O'Neill; I am defendant in the suit of Spencer *v.* O'Neill, being number 59,045 in room number 2, St. Louis circuit court; my first wife's name was Mary Catherine O'Neill; she died October 5, 1871, leaving but one child, Mary G., who was born May 20, 1849; she afterwards married James A. Spencer, May 28, 1873, aged then twenty-four years and eight days; a child was born of that marriage June 9, 1874, and was named John O'Neill Spencer; Mary G. died June 22, 1874; the baby, John O'Neill Spencer, died December 2, 1874; James A. Spencer had by his first wife one son, James H. Spencer, who was living at the time of the death of his half brother, John O'Neill Spencer, and, so far as I know, is still living; I know of the property in controversy, being numbers 929 and 931 Autumn street; Spencer moved into 929, October 17, 1873; I fitted up the house myself, and Spencer and his wife moved in at my request and we all continued to live there together until her death; after her death I hired a woman to take care of the child; the child died at 929 Autumn street; after the death of Mrs. Spencer, he (Spencer) remained at that house, boarding with me, from her death until January 19, 1880, and paid nothing for his board, which I told him he must pay, as I could not afford to keep him; occasionally he sent some butter, chickens, etc., to the house; my daughter, Mary, lived with me at all times till her death; I have always used one of the houses and collected and appropriated the rent of the other; Spencer owes me for board about eighteen hundred dollars at a fair valuation; there was no agreement for price of board; I could not get rid of him and so kept him.

"I have paid all taxes on this property, and all repairs; Spencer never paid any part of the same and never received any of the rents, and never, to my knowledge, or to me, made any claim to ownership; I paid

taxes for every year up to and including 1879; taxes for years following 1879 are unpaid. At the time Spencer and his wife were living in the house I was the keeper thereof, and they lived with me; during the time I have, as stated, occupied said premises they have been assessed in my name, and I have, at times, made return thereof to the assessor. We were living on the premises at the time my wife (Mary Catherine O'Neill) died."

Defendant then read in evidence tax receipts on the property in controversy, from 1867 to 1883, both years inclusive, and they showed that the property sued for had been assessed to John O'Neill all those years, and the amount of taxes received from him.

This was all the evidence; the court thereupon gave the following declaration of law on behalf of the defendant:

"The court declares that under the law and evidence in this cause the plaintiffs are not entitled to recover." To the giving of which said declaration the plaintiffs then and there excepted.

In the view we take of this cause, it is wholly immaterial whether the deed of English and wife to Bayha, her trustee, created an estate in fee tail special, which, under the operation of section 5, page 355, 1 Revised Statutes 1855, turned that into a life-estate in Mary Catherine O'Neill, thus cutting off any tenancy by the curtesy John O'Neill, her husband, otherwise would have had, or whether we hold that the deed to the trustee gave to Mary Catherine O'Neill a title in fee, and her husband acquired by reason thereof a tenancy by the curtesy, since, whichever theory be adopted the result must be the same, for these reasons: If we hold, as did Judge LUBKE, in a suit brought by these plaintiffs against John O'Neill regarding the same property, that a fee was created in his wife, then his tenancy by the curtesy would raise an insuperable barrier against the running of the statute of limitations.

But grant that it did not; grant that only a life-estate was created in the wife, and still a barrier equally as insuperable is found in the fact that John O'Neill, subsequently to the death of the wife, did no act which even tends to indicate an adverse possession as against his daughter, who continued to live with him after the death of her mother, up to the time of her marriage, and, with a short interval after her marriage, until her death, June 22, 1874. Now, as this suit was brought June 11, 1884, it is clear the bar of the statute had not occurred. But there is nothing to indicate an adverse holding on the part of Jno. O'Neill even after the death of his daughter, up to the time Spencer left the premises in 1879.

Judge LUBKE, who tried the other cause, held the same views as to an entire lack of the evidence to show an adverse possession by John O'Neill. Something has been said about the adjudication in that cause being *res adjudicata* in this one, but the case of *Foster v. Evans*, 51 Mo. 40, which upholds that view, has long since been repudiated in this court, and the now prevalent rule asserted that one action of ejectment is no bar to another, though between the same parties, in respect to the same title, and the same tract of land. *Ekey v. Inge*, 87 Mo. 493; *Avery v. Fitzgerald*, 94 Mo. 207. It is because of this, that it becomes necessary, in order to put a stop to repeated actions of ejectment, to resort to bills of peace. *Primm v. Raboteau*, 56 Mo. 407.

For the reasons aforesaid, the judgment will be reversed and the cause remanded with directions to enter judgment for the plaintiff, for the premises and for the sum of fifty dollars per month rent from the eleventh day of June, 1884, down to the time of the delivery of possession to them. All concur, except BARCLAY, J., not sitting.